## SUMMERS v STARK CO. PATRONS' MUTUAL INSURANCE CO.

Ohio Appeals, 5th Dist, Stark Co

Decided February 6, 1939

A. T. Snyder, Canton, for plaintiff-appellant.

Walter S. Ruff, Canton, Donald K. Merwin, Canton, for defendant-appellee.

## OPINION

By LEMERT, J.

On the 24th day of February, 1936, for a valuable consideration the defendant executed and delivered to the plaintiff its policy of insurance on a dwelling house in the sum of $2,000, against loss by fire. Said dwelling house was burned down on the 9th day of March, 1936 and

was an entire loss, and the defendant was duly notified of the loss sustained by the assured. The insurance company refused to pay and the plaintiff brought suit on said policy.

The amended petition, among other things, alleged that the defendant is a mutual insurance corporation, duly organized and existing under the laws of Ohio, with its principal place of business Canton, Ohio. Plaintiff alleged that he was the owner of a substantial right and insurable interest in said dwelling house at the time said policy of insurance was issued and delivered to the plaintiff and at the time said dwelling house was totally destroyed by fire; further alleged that he was one of the residuary legatees under the will of Louise Wernet, deceased, whose estate was at said times in the process of administration. Said will was admitted to probate and record in the Probate Court of Columbiana county, Ohio. By the terms of the policy of insurance said loss was to be paid by the defendant to the plaintiff within ninety days after notice was given to the defendant of said loss.

The defendant-appellee filed its answer admitting that it is a mutual insurance corporation duly organized and existing under the laws of Ohio, with its principal place of business in the city of Canton, Ohio, and that it is engaged in the business of insuring buildings and personal property against loss or damage by fire, lightning, etc.

Defendant denies that it ever entered into a contract or agreement with the plaintiff, as alleged by plaintiff in his petition, and as a second defense, defendant alleges that the plaintiff in the application for insurance represented that he was the sole owner of said dwelling house and that as a result thereof, the defendant issued to the plaintiff a policy of insurance, insuring the dwelling house in the sum of $2,000, and that by reason of false and fraudulent misrepresentation, there was no meeting of minds of the plaintiff and defendant and that there was no contract of insurance and that the purported policy was void and of no effect.

By the terms of the will of Louise

Wernet, as shown by the codicil, the plaintiff, together with his two sisters, each received a one-third interest in the real estate upon which the dwelling house was situated.

To the answer of the defendant the plaintiff filed the following reply:

"Now comes the plaintiff, Raymond E. Summer, and for his reply to the answer herein, denies that in said application he represented himself to be the sole owner of said dwelling house at that time; plaintiff denies that he made any false representations, and he denies that he falsely and fraudulently misrepresented the then existing facts as to the title and ownership of said dwelling with the intent and for the purpose of procuring defendant's reliance thereon, and plaintiff denies that he made any false and fraudulent misrepresentation with the intent of procuring the defendant to issue a policy of insurance, insuring said dwelling house.

"Plaintiff says that the defendant examined said dwelling house, issued said policy of insurance to the plaintiff upon the recommendation of its agent, and the approval and confirmation thereof by C. A. Pontius, President, and William J. Pontius, Secretary, of the defendant, as set forth in said application and Survey No. 10424:

"As agent I have examined the building and recommend the risk.
C. A. Pontius, President
William J. Pontius, Secretary, O. C. Hahn, Agent."

Plaintiff further states that the defendant's agent and officers agreed upon and determined the amount of insurance to be placed on said dwelling in the sum of two thousand ($2,000) dollars.

Plaintiff denies that he falsely misrepresented to the defendant his alleged title to the premises; plaintiff says that he never misrepresented to the defendant that he was the sole owner thereof; that he never represented to the defendant any facts pertaining to the condition, situation or occupancy of said property, plaintiff fur-

ther states that the defendant's agent, O. C. Hahn, knew the condition, situation and occupancy of said dwelling house, for in his said survey he states***

Wherefore plaintiff prays as in his petition."

In the trial of this cause before the judge and jury, and at the close of plaintiff's evidence, the defendant made the following motion:

"Mr. Ruff. Now comes the defendant, and reserving the right to go to the jury in case this motion is overruled, moves the court to direct the jury to return a verdict in favor of the defendant for the reason that the plaintiff has failed to sustain the allegations of his petition; that he has failed to show any insurable interest in the premises whatever; that he has failed to introduce any testimony from which the jury can fix the insurable value of the property as a whole or of the insurable interest which the plaintiff claims he has in the property; that the evidence of the plaintiff clearly shows the existence of conditions which, under the terms of the alleged policy of insurance and the application therefor, discloses noncompliance with the conditions thereof; and that the testimony of the plaintiff conclusively shows that no contract was entered into between the parties for the reason that there was no meeting of the minds."

Immediately thereafter, plaintiff made the following motion:

"Mr. Snyder. Now comes the plaintiff and moves the court for an order directing the jury to return a verdict for the entire amount prayed for in plaintiff's amended petition."

The court sustained the motion of the defendant for a directed verdict and overruled the motion of the plaintiff for a directed verdict for the amount prayed for in plaintiff's amended petition, to which rulings on said motions the plaintiff excepted. The jury rendered a verdict as directed by the judge. The plaintiff in due time filed his motion for a new trial and the same was

overruled. The plaintiff excepted and judgment was rendered on the verdict.

The court sustained the motion of the defendant for a directed verdict for the following reasons, stated on page 29 of the Bill of Exceptions:

"So the court is of the opinion, first, that the plaintiff does not qualify as owner of this property in any sense, which would entitle him under this special form, and setup of this mutual insurance company, to take out insurance, and second, that the warranties—the application does not truthfully set forth the ownership of the property, but rather sets out the fact of sole ownership, having indicated that is about all anyone can interpret from the contract, and I think that both parties interpreted it in that light that it was to be full insurance and he was attempting to take out full insurance when, of course, he was only authorized to take out insurance, if at all, on his share, and not on the shares of his sisters, who also had an interest.

"It seems somewhat technical, probably, in view of the fact that some $2.50 was paid for the insurance, but still the court is bound to follow the law as he believes it is fairly well settled in this state. Motion of the defendant is sustained."

The plaintiff-appellant claims that at the time the policy was issued and at the time the loss occurred, that he had an undivided one-third interest in fee simple in said premises.

There are two important questions in this case. The first one is, did the plaintiff have an insurable interest in the dwelling house set forth in the policy of insurance? Second, if plaintiff had an insurable interest therein, did the plaintiff insure said interest? These two questions can be discussed together.

On the first question a long line of authorities could be cited, going back to the case of **Lawrence v McArter, 10 Ohio 37.** The court held:

"In this case William Barton, Sr., was the owner of the land.

"He died, and his will was proved in 1802. By it, he devised the land,—'to my four sons, Gilbert, William, Joseph, and George, or the survivors of them and their heirs and assigns, to be equally divided among them when the youngest attains the age of 21 years.' All the sons survived the testator."

The court held that each of the sons took a fee.

In the case of **Insurance Company v Leslie, 47 Oh St 409,** the court in this case held that provisions in the policy contrary to the Ohio statute must fall and give way to the statute, and that the agent of the insurance company must fix the insurable value. On page 415 of that opinion:

"The responsibility is thus cast upon the insurance company, of determining by such examination whether it will insure the building, and if so, for what sum; and when it so chooses to take the risk, issue its policy, and receive premiums upon it, there is no reason why it should not be bound by its own examination, and valuation. Hence the statute, we think very wisely provides, that 'in the absence of any change increasing the risk without the consent of the insurer, and of intentional fraud on the part of the insured,' the company shall be liable; if the loss be total, then for the whole amount named in the policy."

In the case of Phoenix Insurance Co. v McLoon, 100 Mass., 475:

"No rule of the law of insurance is better settled by authority than that by which, when the insured has some interest at risk, and there is no fraud, a valuation of the subject insured in the policy is held conclusive upon the parties, at law and in equity. * * * And none is better founded in reason. The very object of putting the contract into the form of a valued, instead of an open policy, is to prevent disputes as to the amount to be recovered by the assured in case of a total loss by the perils insured against; and the premium paid to the insurers is regulated accordingly."

In the **104 Oh St 435, Insurance Co. v Cochran,** the opinion of that case is as follows:

"It is time to get away from some of the old-time doctrines insuring the owner of property in one line, and then uninsuring him in the next ninety-nine, involving his contractual right in a maze of conditions precedent, conditions subsequent, conditions directory and conditions mandatory, under a contract, requiring formal and technical exactness as to the manner and form of all these policy provisions in insurance risks, which are not required in any other kind of contract."

In the case of **Henderson v Ohio Farmers' Insurance Company, 2 Ohio Decisions, 189,** the court there interprets the interest required of the party insuring a building, etc., in the following language:

"We therefore hold that each and all contracts of insurance, or any and all insurable interest in buildings or structures, come within the provisions of this Act, and should be construed, as though the Act read, 'any person, company or association hereafter insuring the owner of any insurable interest, in any building or structure against loss or damage of it by fire or lightning.'"

On page 111, the court says:

"The only element of the risk which the Act expressly required the company to ascertain and fix, is the insurable interest of the applicant."

In speaking of the insurable interest, the court on page 106 says:

"There is nothing in the title or the act limiting its application to contracts made upon applications for the insurance of the whole property of a building, or structure, as in fee; therefore, we are not restrained, by the letter of the statute, from construing it to mean and include all contracts for the insurance of any and all insurable interests in buildings or structures, and

thereby give it the meaning its reason and spirit demand."

And on page 107, says:

"A contract for the insurance of the interest of a life estate, or of any other insurable interest in a building, has the same safeguards against fire and is subject to the same exposures, and its degree of risk and hazard is the same as that of a contract of insurance of the whole property in the same building, and the insurance of each interest in the same building requires the same care in examining the risk, and making a description thereof. Therefore, we arrive again at the same result, to-wit, that 'contracts of insurance of all insurable interests in buildings or structures, come within the provisions of said act and are governed by its provisions'."

In the case of **Beck v Bailey, 32 Oh Ap 423,** the syllabus in part reads as follows:

"1. Courts of law and equity favor early vestings of estates. and will, if possible, construe provisions in wills and deeds in such a way as to avoid forfeiture.

"2. Will leaving real estate to testator's widow for life and after her death to testator's sons, with proviso that within one year after death of wife and himself sons should make certain payments to daughter and grandchildren, held not to convey estate subject to be defeated on, condition precedent, but merely to create charge upon estate."

And Vickery, J., on page 426 says:

"Neither law nor equity favors forfeitures, nor do courts of law or courts of equity favor the holdings of the title to real estate in abeyance. The title to the real estate must have vested in someone. It apparently was vested in the two sons by the terms of the father's will immediately upon the probation of this will, and, if vested in them, then it remained vested in them, unless by some act they forfeited the right to hold this property."

In the trial of this case in the court below, the court seemed to be disturbed about giving the assured the full amount stated in his policy of insurance. On page 22 of the Bill of Exceptions he stated it would be against "public policy." The insurance company was paid the full amount of the premium for $2,000 insurance. Why should it not be required to pay that amount which was fixed by the insurance company, when it is admitted in this case that there was a total loss of the dwelling house? It has been held by the Supreme Court of Ohio that public policy never runs head-on into the statute law.

In the case of **Oleff, Admr. et v Hodapp, Guardian, et, 129 Oh St 432, 2 OO 409,** on page 438, Judge Stevenson, in rendering the opinion of the court, said:

"We have heretofore stated that there is no statutory law in Ohio that deprives Tego of his right to this account. Counsel insist that Tego's right should be denied him because to allow it would be in contravention of sound public policy and place a premium on murder. We are not subscribing to the righteousness of Tego's legal status; but this is a court of law and not a theological institution. We have no power to attaint Tego in any way, shape or form. Property can not be taken from an individual who is legally entitled to it because he violates a public policy. Property rights are too sacred to be subjected to a danger of that character. We experience no satisfaction in holding that Tego is entitled to this account; but that is the law and we must so find."

The court below seemed to be disturbed as to how a mutual insurance company might be able to collect assessments. We are of the opinion that that matter is taken care of by §9607-16 GC, which reads as follows:

"**Liability of Policy Holder.** Each policy holder shall be liable to pay his

proportional part of any assessments which may be laid by the company in accordance with law and his contract, on account of losses and expenses incurred while he was a member."

Even though the defendant may be known as a mutual insurance company, it is not exempt from the laws regulating regular or "old line" insurance companies.

Sec. 9607-26, GC, reads as follows:

"Laws Applicable. The laws of this state governing corporations and the laws relating to insurance to the extent they are now or hereafter may be applicable to any such mutual companies and not in conflict with the provisions of this act, are hereby made specifically applicable to such mutual companies."

So that from the record before us, we are of the opinion that Mr. Summers did not intend to commit any fraud upon anyone. In fact, the record shows there was no fraud committed. We are of the opinion that the plaintiff-appellant had ▮▮▮▮▮ at the time the policy was issued and at the time that the total loss occured an insurable undivided one-third interest in fee simple in said premises.

We are of the opinion that the court below erred in directing a verdict for the defendant-appellee, which affected a substantial right of the plaintiff-appellant and in overruling plaintiff-appellant's motion for a new trial, and that the trial court should have sustained the motion of the plaintiff-appellant for a directed verdict for the full amount prayed for in plaintiff's amended petition.

The answer of the defendant-appellee contained no defense to the cause stated in the amended petition. The answer does not state that there was any change increasing the risk without the consent of the insurer or intentional fraud on the part of the insured. These two are the only defenses recognized under on present statute law for §9583 says:

"In the absence of any change increasing the risk without the consent of the insurers, and also of intentional fraud on the part of the insured in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurer received a premium shall be paid."

So that the judgment of the court below will be reversed and cause remanded to lower court for further proceedings according to law. Exceptions may be noted.

MONTGOMERY, PJ. and SHERICK, J., concurring.